Duane RICHIE, Next Friend of Phillip Richie *v.* BOARD of EDUCATION of the Lead Hill School District; Mark Methvin, President

96-521                                             933 S.W.2d 375

Supreme Court of Arkansas
Opinion delivered November 18, 1996
[Petition for rehearing denied December 23, 1996.*]

---

* Brown, J., would grant.

*George B. Morton*, for appellant.

*W. Paul Blume*, for appellee.

BRADLEY D. JESSON, Chief Justice. Appellant Duane Richie filed a petition for mandamus in Boone County Circuit Court on

behalf of his son, Phillip Richie, to compel appellee Lead Hill School District to hear an appeal of Phillip's three-day suspension from school. The trial court granted summary judgment in the district's favor and denied the petition. Because we agree that Ark. Code Ann. § 6-18-507(b)(Repl. 1993 and Supp. 1995), clearly establishes the legal right to a hearing before the school board when a student is suspended by a teacher, we hold that the trial court erred in granting summary judgment and reverse and remand.

On March 29, 1995, Phillip Richie, a sixth grader, was travelling to a school basketball game in a school bus being driven by Charles Archer, superintendent of the Lead Hill School District. While on the bus, Phillip asked a friend, "Did you fart?" According to Mr. Archer, Phillip immediately admitted to asking this question, which Mr. Archer viewed as obscene. The superintendent told Phillip to report to the principal's office the following morning, at which time Phillip would receive a paddling. The next morning, Duane Richie arrived at the principal's office with his son. After explaining what Phillip had said on the bus, Mr. Archer told Mr. Richie that Phillip would receive a paddling. When Mr. Richie complained that the punishment was too severe for the offense, Mr. Archer, in the presence of Principal Pat Bailey, explained that the alternative punishment was a three-day suspension from school. Mr. Richie would not allow his son to be paddled, and instructed Phillip to go to their vehicle. Phillip did not return to school for three days.

In his petition for mandamus, Mr. Richie claimed that he requested permission to appeal the suspension to the school board on March 30, April 13, and April 14, 1995, and that all three requests were denied by the board through Mr. Archer. The district filed a motion for summary judgment. After receiving affidavits from Mr. Archer and Ms. Bailey and briefs from both parties, the trial court granted the motion and dismissed the mandamus petition. Specifically, the trial court concluded that (1) the mode of punishment chosen by Mr. Archer, a paddling, was not appealable; (2) Mr. Richie voluntarily selected an alternative form of punishment — suspension — and in doing so forfeited his right to appeal to the school board; (3) the relief sought was moot because Phillip had served his suspension; and (4) Mr. Richie was not entitled to a hearing as a matter of law. It is from this ruling that Mr. Richie has appealed.

■ We first address the trial court's ruling that Mr. Richie's claim was moot because Phillip had already served his suspension. In *Springdale Bd. of Educ., v. Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987), appellee Bowman, a high-school student, was suspended for receiving drugs on school grounds and sought and obtained an injunction in chancery court. The school board appealed. We rejected Bowman's claim that the case was moot since she had already graduated, reasoning that the questions raised in the case were issues of public interest and practical importance, and were subject to repetition. *Id.* at 68. Because we view the right of a student to appeal to the school board a suspension from school made by a teacher as an issue of public importance and one subject to repetition, we decline to dismiss this case for mootness.

Turning to the merits, Mr. Richie claims that Phillip was entitled to a hearing in front of the school board as a matter of law. Particularly, he asserts that the plain wording of Ark. Code Ann. § 6-18-507(b) specifically gives a student who is suspended from school by a teacher the right to appeal the suspension to the school board. In response, the district asserts that Phillip was not entitled to appeal his three-day suspension under the United States Supreme Court's decision in *Goss v. Lopez*, 419 U.S. 565 (1974), holding that a student facing suspension is entitled, at the very minimum, to some kind of notice and some kind of hearing. The district relies on the portion of the *Goss* decision in which the Court stopped short of requiring that hearings in connection with suspensions less than ten days must afford the student "the full panoply of procedural rights applicable to a criminal prosecution." *Bethel School Dist. No. 403 v. Frazier*, 488 U.S. 675, 686 (1986).

■ In construing statutes, we give words their ordinary meaning and attempt to give effect to legislative intent:

> The beginning point in interpreting this statute, as with all statutes, is to construe words just as they read and to give them ordinary and accepted meaning. In addition, this court adheres to the basic rule of statutory construction which is to give effect to the intent of the legislature, making use of common sense.

*Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 221 (1995), *quoting State v. Johnson*, 317 Ark. 226, 876 S.W.2d 577, 579 (1994) (other citations omitted).

The statute at issue, Ark. Code Ann. § 6-18-507(b), provides in pertinent part:

> (b) The board of directors may authorize the teacher to suspend any pupils, *subject to appeal to the board.*

(Emphasis added.) The title to the predecessor of this provision, Ark. Stat. Ann. § 80-1516 (Repl. 1980) is "Suspension of pupils — Causes — *Right to appeal*" (emphasis added).

■   While the United States Supreme Court has outlined in *Goss* v. *Lopez* what minimum due process is required in cases involving school suspensions and expulsions, some states have accorded greater substantive and procedural due process rights than the minima that are mandated by the Fourteenth Amendment. William D. Valente, *Education Law — Public and Private*, § 16.91 at 567 (1985 and Supp. 1995). When reading § 6-18-507(b), it is clear that our legislature has afforded greater procedural due process protections to students who have been suspended by teachers. Section 6-18-507(b) gives the suspended student the right to a hearing before the school board. There is no qualification in the statute indicating that it only applies to suspensions greater than ten days, and we cannot defy the plain meaning of this provision by inserting such a restriction. The legislature has amended § 6-18-507 twice since *Goss* v. *Lopez* was decided, and has chosen not to revise or remove this subsection. *See* Act 567 of 1995; Act 441 of 1979. We have repeatedly held that, where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Office of Child Support Enforcement* v. *Harnage, supra; Arkansas Dep't of Human Serv. v. State*, 312 Ark. 481, 850 S.W.2d 847 (1993). The clear and definite meaning of § 6-18-507(b) is that a student who is suspended by a teacher has the right to appeal the suspension to the school board.

The dissent cites *Donoho* v. *Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994), in support of its position that Ark. Code Ann. § 6-18-502(c) (Supp. 1995), which generally directs the Arkansas Department of Education to establish school-district student-discipline policies, impliedly repeals § 6-18-507(b). We initially observe that this point was not raised in the parties' briefs. In any event, the dissent's reliance on *Donoho* is misplaced. In that case, we held that a subsequent, specific statute governing the timeliness of setoffs of

judgments impliedly repealed two earlier provisions generally authorizing setoffs. Here, we have a specific statute governing a student's right to appeal a suspension by a teacher to the school board. The general statute cited by the dissent simply cannot impliedly repeal this specific statute at issue. *See Donoho*, 318 Ark. at 639. We feel certain that, if the legislature no longer wishes to provide these heightened procedural due process protections to students who face teacher suspensions, it will amend or repeal § 6-18-507(b).

The district also asserts that, because Mr. Richie voluntarily selected suspension as an alternative form of punishment to paddling, he forfeited his right to appeal the suspension to the school board. While the trial court agreed with district's contention, we do not.

The General Assembly has charged the Department of Education with the responsibility of establishing guidelines for the development of school-district student-discipline policies. Ark. Code Ann. § 6-18-502 (Supp. 1995). In turn, each school district is responsible for developing its own written policies in compliance with the Department's guidelines. Ark. Code Ann. § 6-18-503 (Supp. 1995). The Lead Hill School District developed a written student-discipline policy which includes certain rules concerning conduct on its buses. Particularly, Rule 8 prohibits loud yelling and profane language. Specific disciplinary procedures for infractions of bus rules are as follows:

1. Warning, conference with student
2. Paddling
3. Suspension *from bus* (3 days)
4. Conference: Principal/bus driver/bus supervisor/parent
   Suspension from the bus

(Emphasis added.) The policy further provides that the standardized lists for disciplinary infractions will be adhered to in "alphabetical" order after each occurrence. In Mr. Archer's affidavit, he states that "[I]t is the standard practice in the Lead Hill School District to paddle, with three (3) licks, each student who utters an obscenity or profanity, whether on a school bus or on campus." Obviously, the standard practice that Mr. Archer articulates differs from the district's written policy. To protect due process, the courts, in matters pertaining to a governmental entity's observance and implementation of self-prescribed procedures, must be particularly vigilant and

must hold such entities to a strict adherence to both the letter and the spirit of their own rules and regulations. *Smith v. Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995). In this case, the district failed to adhere to its own expressly enunciated procedures for punishing infractions of its school bus rules. Because neither alternative form of punishment offered to Phillip was authorized by the district's own written policy, it would undermine the very purpose of procedural due process protections for us to allow the district, through violation of its own procedural guidelines, to effectively deny Phillip's right to appeal his suspension from school.

■ A writ of mandamus will issue whenever the directors of a school district fail or refuse to do an act which is plainly their duty to do. *Springdale Bd. of Educ. v. Bowman, supra; Maddox, et al. v. Neal, et al.*, 45 Ark. 121 (1885). Because § 6-18-507(b) clearly establishes the legal right to a hearing before the school board when a student is suspended by a teacher, we hold that the trial court erred in granting summary judgment in appellee's favor and denying Mr. Richie's petition for writ of mandamus.

Reversed and remanded.

DUDLEY, GLAZE, and BROWN, JJ. dissent.

ROBERT L. BROWN, Justice, dissenting. Although I agree that the relief sought by Phillip Richie is not moot because of the potential for recurrence, I must respectfully dissent. The practical effect of the majority opinion is to hold that any student, whether in the Lead Hill, Pine Bluff, or Little Rock School District, has a mandated right to have appeals of suspensions heard by the school board. This is so, according to the holding, even when the suspensions are for half a day. That interpretation reaches an absurd result because I can now foresee school boards being inundated by suspension appeals. *See Hensen v. Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). I respectfully disagree.

The predecessor of Ark. Code Ann. § 6-18-507(b) (Supp. 1995) was enacted as part of Act 169 of 1931. Since that time, the General Assembly has directed the Arkansas Department of Education ["ADE"] to establish school district student discipline policies. 1983 Ark. Acts Ex. Session 77, 104. The Arkansas Code now reads in relevant part:

(c) The school discipline policies shall:

....

(3) Establish procedures for notice to students and parents of charges, hearings, *and other due process proceedings* to be applicable in the enforcement and administration of such policies by the school administrator and by the school board.

Ark. Code Ann. § 6-18-502(c) (Supp. 1995)(emphasis added). In turn, the ADE, pursuant to this express authority from the General Assembly, promulgated the following provision:

Suspension: Schools may suspend students from school. A suspension is defined as dismissing the student from school for any time period not exceeding 10 days. For a suspension, the United States Supreme court in *Goss* v. *Lopez* required that a student be accorded the minimum due process requirements under the United States Constitution. Districts should only use suspension and/or expulsion when all other alternatives fail. Districts should afford suspended students the following rights:

1. Prior to any suspension, the principal or his/her designee, shall advise the student in question of the particular misconduct of which he/she is accused, as well as the basis for the accusation.

2. The pupil shall be given an opportunity at that time to explain his/her version of the facts to the school principal or his/her designee.

3. Written notice of suspension and the reason(s) for the suspension shall be given to the pupil.

4. Any parent, legal guardian, or person acting as a parent shall have the right to appeal to the superintendent or his/her designee.

Arkansas Department of Education Rules and Regulations Governing Development, Review and Revision of School District Student Discipline and School Safety Policies § 6.04(B).

When reading § 6-18-502(c) together with the ADE rules, it is clear that minimal due process is achieved pursuant to *Goss* v. *Lopez*, 419 U.S. 565 (1974), which is all that is required. Although not favored, repeal of a statute by implication may be effected when there exists "an invincible repugnancy between the former and later

provisions that both cannot stand together." *Donoho* v. *Donoho*, 318 Ark. 637, 639, 887 S.W.2d 290, 291 (1994). Furthermore, the implication must be "clear and irresistible." *Riceland Foods, Inc.* v. *Second Injury Fund*, 289 Ark. 528, 532, 715 S.W.2d 432, 434 (1986).

Section 6-18-507(b), originally enacted in 1931, calls for appeals before the school board relating to *any* suspension, which is clearly repugnant to Ark. Code Ann. § 6-18-502(c) (Supp. 1995), originally enacted in 1983, which directs the ADE to promulgate appropriate procedures to satisfy due process requirements. Mandatory appeals for *any and all* suspensions, no matter how short the duration, goes well beyond the General Assembly's subsequent enactment to address due process requirements and delegate rule-making authority to the ADE.

The due process afforded to Phillip Richie with respect to the three-day suspension is consistent with the ADE rules discussed above. Because the ADE rules were promulgated under a later act of the Arkansas General Assembly and because the majority's reading of the 1931 Act leads us to an absurd and impractical result, I would affirm.

DUDLEY, J., joins.