GAINES & COMPANY *v.* HOLMES *et al.*

1. The petitioner had no adequate remedy at law, and the equitable petition set forth a cause of action entitling the petitioner to at least some of the relief prayed for. Whether the petitioner was entitled to all of the relief prayed for need not be decided.

2. On the interlocutory hearing of an application for injunction to restrain the sheriff and solicitor-general from confiscating and destroying a ship-

ment of whisky seized in Dade County, Georgia, while in transit as a through shipment from Glenn Creek, Ky., to Los Angeles, Cal., the rejection as evidence of permits, purporting to have been issued by the proper Federal authorities, and authorizing the purchase and transportation of the whisky, was error; as these permits, standing alone, would constitute prima facie evidence of compliance with the law.

3. There is no law of this State which makes contraband or unlawful the transportation of intoxicating liquors on a through bill of lading in interstate commerce on an interstate railway train from one State to another State, merely passing through this State, where there has been no delivery to any person within this State, nor any access or control exercised by any person within this State, except the common carrier in the act of transportation. Moreover, if the prohibition statutes were construed to apply to such interstate shipments, such State law would be invalid and void because in conflict with the interstate-commerce clause of the constitution of the United States.

4. Applying the principles stated above, the court erred in refusing an interlocutory injunction.

No. 2886. SEPTEMBER 30, 1922.

Petition for injunction. Before Judge Tarver. Dade superior court. September 17, 1921.

*Randolph & Parker,* for plaintiff.

*J. M. Lang, solicitor-general,* for defendants.

GILBERT, J. W. A. Gaines & Company, a corporation, filed a petition against L. M. Holmes, sheriff of Dade County, and Joe M. Lang, solicitor-general of the Cherokee Circuit, seeking to enjoin the defendants, their agents, employees, deputies and subordinates from in any wise interfering with, destroying, confiscating, selling or disposing of or changing or altering the status of any of certain whisky and containers thereof, which had been seized on June 21, 1921, by the sheriff in said county while contained in a railroad freight-car which was at the time a part of a train passing through said county. The petition further prayed, that the defendants be enjoined from preventing the transportation of such whisky to its destination, and from proceeding further with an attempt to obtain an order from the superior court to confiscate said liquor and to have the same declared contrabrand; that a receiver be appointed to take charge of the whisky and to conserve the same, giving such bond as might be required by the court; that the right of lawful possession of said whisky be decreed by the court to be in Alabama Great Southern Railroad Company as a common carrier, said whisky being, at the time of its seizure, in the possession of said company for purposes of

transportation; that the seizure of the whisky and attempted confiscation and destruction be decreed to be unlawful and illegal; and that defendants be required to restore the possession and status of said whisky. Petitioner prayed for a temporary restraining order, alleging that the same was necessary to prevent irreparable damage and loss; for an interlocutory injunction as well as a permanent injunction.

The petition set out that the car-load of whisky had been purchased by the Brunswig Drug Co., of Los Angeles, Cal., from petitioners in the State of Kentucky, under permits as required in the act of Congress known as the Volstead act; that the railroad had obtained a permit from the United States Government, as provided in said act; that the whisky had been delivered to the railroad company in the State of Kentucky for the purpose of transportation to Los Angeles, Cal., that it was part of an interstate shipment passing over several lines of railway; that it was so passing through the County of Dade and State of Georgia, and, while the freight-train carrying the carload of whisky was temporarily stopped at Trenton in said county for water and to receive orders, the sheriff seized the car and its cargo of whisky; that it was a through train and carried no freight to be put off at Trenton; that shortly thereafter Joe M. Lang, solicitor-general, filed in the superior court a petition praying for an order and judgment of confiscation and for the condemnation and sale of the freight-car. A rule nisi was issued on this petition, calling on the Alabama Great Southern Railroad Co. to show cause on a named day why an order should not be passed by the court, "directing that said whisky be destroyed and poured out by the sheriff of said County of Dale." The record does not disclose the further progress of the suit by the solicitor-general. Subsequently, however, to the date set for the hearing of that petition, Gaines & Co. filed the petition with which we are now dealing. This petition alleged that they were without an adequate remedy at law, and prayed for relief under the equitable powers of the court. Among other things this petition alleged that the shipment was a lawful one, not prohibited under the laws of Georgia; that the seizure of the whisky was unlawful, because it was moving through the State in interstate commerce, of which the State of Georgia had no jurisdiction;

that in so far as the law of Georgia might purport to affect whisky lawfully owned and lawfully held in possession under the laws of the United States, in which there is a valid property right, the statute of the State of Georgia is utterly void and inapplicable; that if the statute of the State of Georgia was intended to apply in cases of this kind, it would be unconstitutional, because in conflict with the due-process clause of the constitution and with the terms of the Volstead act, which authorized and prescribed the conditions for such shipments.

For the purposes of a decision of the case as made, it is not necessary to go into further particulars in regard to the allegations of the petition, or to state the contentions of the defendants in their answer, other than that it contains a denial of the material allegations of the plaintiff's petition. The court issued a rule nisi requiring the sheriff and the solicitor-general to show cause why the prayers of the petition should not be granted, and in the meantime and until the further order of the court the defendants were restrained from "confiscating or undertaking to confiscate, destroy, or otherwise alter or change the status of the whisky described in the within petition, or any part thereof, and from further proceeding, as in said petition set out, to secure a condemnation and confiscation of the same." The restraining order made no mention of the railway freight car. On the hearing and after the introduction of evidence, the court rendered a judgment dissolving the restraining order theretofore granted, and denying the application for interlocutory injunction. From the record before us it appears that no question is involved with regard to the freight-car in which the whisky was being transported.

1. The defendants denied that portion of the petition which alleged that the plaintiff was without an adequate remedy at law, and insisted that the interlocutory injunction was properly refused, regardless of the other issues raised, on the ground that section 20 of the act of the General Assembly, approved March 28, 1917 (Ga. Laws Extraordinary Session 1917, p. 16), which provides for the seizure of vehicles and conveyances transporting prohibited liquors and beverages, and which also provides for the trial and adjudication of the rights of the owners of such vehicles and conveyances, furnishes an adequate remedy. To sustain this

contention the defendants cite the case of *Gunn* v. *Atwell,* 148 *Ga.* 137 (96 S. E. 2), and other cases to the same effect. These cases are not in point. They have reference to the seizure of vehicles and conveyances such as are mentioned in the act of the General Assembly above mentioned, and are not applicable where intoxicating liquors and not vehicles and conveyances are seized. The Georgia act properly made a difference with regard to intoxicating liquors, which fall peculiarly within the province of the police power of the State, and which the State may exercise the authority to proceed in a summary manner to confiscate and destroy, and that of vehicles and conveyances which are not per se harmful, and over which the State, acting under the police power, would have no authority to seize and confiscate without affording to the owner the right of notice and a hearing. Furthermore, under the provisions of the act, all vehicles and conveyances transporting prohibited beverages are not included within its provisions. The character of vehicles included in the act are described as follows: " All vehicles and conveyances of every kind and description *which are used on any of the public roads or private ways of this* State [italics ours], and all boats and vessels of every kind and description which are used in any of the waters of this State, in conveying any liquors or beverages *the sale or possession of which is prohibited by law* " [italics ours], etc. The act provides for a seizure of these vehicles and conveyances by the arresting officers of the State, and for a report of such seizure to the prosecuting officers, and makes it the duty of such prosecuting officers to institute condemnation proceedings, with notice to be served on the owner or lessee, and for a hearing. Obviously the railroad-car is not a vehicle or conveyance used on " any of the public roads or private ways of this State," and of course a freight-car is not included in any of the remaining language of the act above quoted. This apparently was well understood by the trial court and by the defendants in the case; since the status of the freight-car seems not to be an issue in the case, neither the rule nisi nor the judgment of the court making any reference thereto. Since the sheriff, is authorized, under the act, to proceed ex parte to obtain an order of the court for a summary destruction of the whisky, the plaintiffs are not provided with any remedy at law by which their rights may be adjudicated. It

may be contended that, since intoxicating liquors and beverages are made contraband and the owners thereof deprived of any property rights therein, the plaintiffs, owners of the liquors, have no rights to be adjudicated, and therefore, if notice and hearing had been provided by the act, it would avail nothing. We think, however, that the statute does not make contraband liquors passing through the State without stopping, as in this case, nor does it take away the element of value as property in such liquors. Liquors property values of which are destroyed are those over which the State has exercised its legislative jurisdiction. The fact that the solicitor-general did file a petition in court for the purpose of obtaining an order of condemnation of the whisky, and that the railroad company notified of such petition may have filed an answer, will not serve as affording an adequate remedy to the owner of the whisky. This is true because there is no provision in law authorizing the owner of the whisky to intervene in such a proceeding. Finally, the allegations in regard to the petition filed by the solicitor-general seem to be merely a part of the history of the entire transaction, and not to have been regarded as an essential allegation by the trial court. The prayers of Gaines & Co., as well as the rule nisi and the judgment of the court denying an interlocutory injunction, fail to lay any stress upon the petition of the solicitor-general; and the case was treated as if the sheriff was undertaking to proceed in a summary manner, as provided in the Georgia statute, to destroy the liquors which he had seized. The petition of Gaines & Co. denies that the defendants are acting under any valid law of the State of Georgia which has application to whisky being transported in interstate commerce. Upon the contrary the petitioner insists that the defendants were acting without the authority of law. As will be seen from what is said in another portion of this opinion, we are of the opinion that the defendants were acting without the authority of law. Defendants contend that this is a criminal, or at least a quasi-criminal proceeding, and that courts of equity will not undertake to restrain proceedings of either character. We cannot agree that the case is either criminal or quasi-criminal. The effort of the defendants to destroy and confiscate the whisky is purely a proceeding in rem. It is in no way connected with any indictment or criminal accusation in any criminal proceeding

against any person whatsoever, in so far as the record discloses. Accordingly we hold that the petitioner was without an adequate remedy at law, and was entitled to a hearing and adjudication on the petition for injunction.

2.   There was evidence to the effect that the whisky was loaded on a railroad train in Kentucky for transportation over different lines of railway from Kentucky to Los Angeles, Cal., under a through bill of lading from the point of shipment to the destination in California.   It is not contended that the whisky was to be delivered anywhere within the territorial limits of the State of Georgia, or that it was delivered, or that any one had access to it except the sheriff of Dade County, who made the seizure.   It is true that the whisky was shipped to the order of the consignor, with direction to notify Brunswig Drug Company; and it is contended that the consignor could have had access to it at any point en route to the final destination.   It does not appear, however, that the consignor exercised the right to take possession of it within the territorial limits of Georgia, or attempted to do so; and so far as the principles of law applicable to the case are concerned, it will be treated as though the shipment were one passing through the State of Georgia without delivery to any person in the State, and to which no person in the State exercised the right of access to it or any right of property therein, save that the railway company as a common carrier exercised possession and control for the purpose of through transportation.   In General Oil Co. *v.* Crain, 209 U. S. 211 (28 Sup. Ct. 475, 52 L. ed. 754), it was said:  "Merchandise may cease to be interstate commerce at any intermediate point between the place of shipment and ultimate destination; and if kept at such point for the use and benefit of the owners and under the protection of the laws of the State, it becomes subject to the taxing and police power of the State." In this case no act of the owner or of any other person caused the whisky shipment to terminate in this State, but, as above stated, the contrary definitely appears.   The act of Congress known as the Volstead act, among other provisions, contains the following: "Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as herein provided, and the commissioner may, upon applica-

tion, issue permits therefor." Fed. Stat. Ann. Supp. 1919, p. 206, § 3. On the hearing of the case the petitioner offered in evidence certain permits purporting to have been issued by the proper Federal authorities, authorizing the transportation of the specific shipment of whisky from Glenn Creek, Ky., to Los Angeles, Cal.; and also similar authority for the sale of the whisky by Gaines & Co. and the purchase of the same by Brunswig Drug Company. On objection by the defendants the court refused to admit these permits in evidence, on the ground that they were not accompanied by other documents such as the applications for the permits which the court deemed necessary to make the evidence admissible. These permits, standing alone, constitute prima facie evidence of compliance with the law; since it is a presumption that the public officers issuing them did so in full compliance with the law. This is especially true on the hearing for an interlocutory injunction. Whether these documents would have been admissible upon the trial of a criminal case, where an indictment had been returned in the Federal courts for transportation of intoxicating liquors without compliance with the terms of the Volstead act, is not for decision. For the purposes of the interlocutory hearing in this case the permits above mentioned should have been admitted, and it was error to exclude them. With these permits in evidence the facts were sufficient to demand a finding that the whisky in question was being transported in interstate commerce in compliance with and under authority of the express provision of the Volstead act. In the case of *Jones* v. *Hicks,* 150 *Ga.* 657 (104 S..E. 771, 11 A. L. R. 1315), at p. 664 it was said: "We reject the view that the legislation of Congress will supersede and abrogate the laws of the State which are appropriate for the enforcement of the amendment. We conclude that the power of Congress and of the States is equal and may be exercised by the several States for the purpose of enforcement concurrently within their legitimate constitutional spheres." The qualification contained in the above, by the use of the words "within their legitimate constitutional spheres," undoubtedly has application to the superior control of transportation of whisky in interstate commerce by the Federal government. This superior authority was delegated in the terms of the Federal constitution which provides that the Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian

tribes." Const. U. S. art. 1, sec. 8, par. 3, Civil Code (1910), § 6644.

3. We will now examine the prohibition statutes of Georgia, in regard to transportation of intoxicating liquors, for the purpose of ascertaining whether such a shipment is contrary to the laws of this State. The act of the General Assembly approved March 28, 1917 (Ga. Laws Ex. Sess. 1917, p. 8), declares, in the first section thereof: "That from and after the passage of this act it shall be unlawful for any common carrier . . to transport, ship, or carry . . from any point without this State to any point within this State, . . whether intended for personal use or otherwise, any spirituous, vinous, malted, fermented or intoxicating liquors, or any of the prohibited liquors or beverages, as are defined in the act approved November 17, 1915 . . . It shall be unlawful for any corporation, firm, person or individual to receive from any common carrier, . . or to have, control, or possess, in this State, any of said enumerated liquors or beverages, whether intended for personal use or otherwise, save as hereinafter excepted." The whisky here seized was in the possession of the common carrier and in process of transportation. As above quoted, the law of Georgia prohibits a common carrier from transporting whisky "from any point without this State to *any point within this State*" [italics ours]. It is insisted that the whisky was transported by a common carrier "to a point within this State." It becomes necessary, therefore, to determine the true legal meaning of the words "to any point within this State." That question has been definitely settled by a decision of the Supreme Court of the United States, in which all the Justices concurred. There was a prosecution under the Reed amendment to the post-office appropriation act of March 3, 1917 (39 Stat. 1068, 1069). That law reads as follows: "Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any State or Territory the laws of which State or Territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes, shall be punished as aforesaid: Provided, that nothing herein shall authorize the shipment of liquor into any State contrary to the laws of such State." It will be observed that the Reed amendment pro-

hibited the shipment "into any State" under the circumstances stated therein. The defendant in the case of United States v. Gudger, 249 U. S. 373 (39 Sup. 323, 63 L. ed. 653), was a passenger on a railroad-train from Baltimore, Md., to Asheville, N. C.; and while the train was temporarily stopped at Lynchburg, Va., he was arrested, his baggage examined, and it was found that he had in his valise some seven quarts or more of whisky. In the report of the case it is said that the evidence showed that the defendant had no intention of leaving the train at Lynchburg or at any point in Virginia, and that his sole intention was to carry the liquor with him into the State of North Carolina to be there used as a beverage. Virginia, at the time of the above-stated transaction, was a State which prohibited the manufacture and sale therein of intoxicating liquors for beverage purposes; and the defendant was indicted for having transported into that State a quantity of whisky in violation of the Reed act. The charge, it was admitted, had no other foundation than the fact that the defendant was arrested while the train was stopped at the railroad station at Lynchburg and while he was en route to Asheville, N. C., and the accused was traveling on a through ticket from Baltimore to Asheville and return. The headnote in the case is as follows: "The Reed Amendment, prohibiting the transporting of liquor in interstate commerce 'into' any State the laws of which prohibit its manufacture, etc., does not preclude its transportation through such a State to another." Chief Justice White delivered the opinion, and, speaking for the court, said as follows: "Under this state of facts we think the court was clearly right in quashing the indictment, as we are of opinion that there is no ground for holding that the prohibition of the statute against transporting liquor in interstate commerce 'into any State or Territory the laws of which State or Territory prohibit the manufacture,' etc., includes the movement in interstate commerce through such a State to another. No elucidation of the text is needed to add cogency to this plain meaning, which would, however, be reinforced by the context if there were need to resort to it, since the text makes clear that the word 'into,' as used in the statute, refers to the State of destination, and not to the means by which that end is reached, the movement through one State as a mere incident of transportation to the State into which it is shipped.

The suggestion made in the argument, that although the personal carriage of liquor through one State as a means of carrying it beyond into another State violates the statute, it does not necessarily follow that transportation by common carrier through a State for a like purpose would be such violation, because of the more facile opportunity in ,the one case than in the other for violating the law of the State through which the liquor is carried, is without merit. In last analysis it but invites, not a construction of the statute as enacted, but an enactment by construction of a new and different statute." From the above it will be seen that by the highest authority in the United States the meaning of the word transport "to a point within this State" means to a point of destination within this State. Therefore, there was no violation of the act of 1917 of the General Assembly of this State, making it unlawful for common carriers to transport intoxicating liquors and beverages. The Reed amendment above referred to was approved on March 3, 1917, and was therefore in operation when the Georgia act in regard to the transportation of intoxicating liquors was approved on March 28, 1917, and the General Assembly of Georgia used language having the same meaning and almost in the same words. In citing the case of United States *v.* Gudger, which had reference to whisky carried by a passenger traveling on a through railroad ticket, we do not mean to hold that one riding on a railway train and on a through ticket, passing through this State, could legally transport in his valise or in his pocket liquor to which he could have access. That question is not made in this case. The case is cited purely for the purpose of showing the meaning of the words " into the State." In order to carry such liquors lawfully, the provisions of the Volstead act, including the securing of permits, must be complied with in every particular. Since we have held that the Georgia statute does not make unlawful the transportation of intoxicating liquors and beverages in the circumstances existing in this case, it becomes quite unnecessary to decide whether the latter prevails if the Georgia statute and the Volstead act are in conflict. Under our construction there is no such conflict. " A statute enacted in the exercise of the police power of a State is not necessarily violative of the interstate-commerce clause of the Federal constitution because it incidentally affects such commerce to a limited degree."

*Cureton* v. *State,* 136 *Ga.* 91 (70 S. E. 786), at p. 94. In *Armour* v. *Augusta,* 134 *Ga.* 178 (67 S. E. 417, 27 L. R. A. (N. S.) 676), at p. 186 it was said: " The mere fact that a legitimate police regulation of a State may incidentally affect interstate commerce, to a limited degree, does not render such State legislation obnoxious to the interstate-commerce clause of the Federal constitution, not being a needless intrusion upon the domain of Federal jurisdiction, or strictly a regulation of interstate commerce." It appears that the General Assembly, in framing the Georgia prohibition act, avoided such conflicts and kept steadily in view the fact that such legislation destroying property rights and interfering with private business could only be constitutionally done even under the police power when the public health, safety, and general welfare were concerned. " It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police powers of the State. There are, of necessity, limits beyond which legislation cannot rightfully go. . . ' The distinction between a government with limited and unlimited powers is abolished if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' . . If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." Mugler *v.* Kansas, 123 U. S. 623, 661 (8 Sup. Ct. 273, 31 L. ed. 205). It is readily conceivable that the General Assembly did not deem the public health, safety, and general welfare to be affected by the shipment of intoxicating liquors and beverages on a through bill of lading from Kentucky to California in a box-car of a railroad company, making no stops within the territorial limits of this State, except a temporary one where the train to which it was attached stopped for water and orders. For these reasons, doubtless, the General Assembly did not undertake to prohibit such through shipments. These observations in regard to the power of the State to legislate in regard to through shipments of whisky apply equally to the other provisions of the prohibition law of Georgia destroying the property rights

and authorizing the seizure and confiscation of such liquors. The defendants admittedly were undertaking to proceed under the authority of section twenty of the act of 1915 (Acts Ex. Sess. 1915, p. 88). This section takes away all property rights and makes contraband intoxicating liquors and the vessels in which such liquors are kept under the conditions named therein. It provides that "no property rights of any kind shall exist" in prohibited liquors and beverages and in the vessels in which they are contained, when "kept or used for the purpose of violating any provision of this act or any law for the promotion of temperance or for the suppression of the evils of intemperance." It also destroys the property rights "in any such liquors when received, possessed, or stored at any forbidden place . . in this State for the purpose of sale or unlawful disposition or unlawful furnishing or distribution," and in all cases such liquors, beverages, and vessels "kept or used for the purpose of violating the law, as aforesaid," are made contraband and forfeited to the State when seized. Considered as a whole, a fair and reasonable construction of the act just mentioned makes contraband such liquors only as are received, possessed, or stored at any forbidden place, or kept or used for the purpose of violating the law. If, however, the above-mentioned act was intended to deal with intoxicating liquors merely passing through the State as bona fide interstate shipments on a railway train, the portion of the act so intended to deal with interstate shipments would be invalid and void, because obnoxious to the interstate-commerce clause of the constitution of the United States. But, as stated above, we do not think the act should be so construed, and we believe that such a construction would be contrary to the intention of the General Assembly. The provision of the Volstead act, quoted above, which authorizes the transportation of intoxicating liquors under prescribed conditions must of course be construed in connection with the Reed amendment, also quoted above. The language of the Volstead act, considered alone, would be broad enough to authorize shipments of intoxicating liquors from one State into another, and whether the State of destination prohibited the receipt or possession of such liquors or not; but the Reed amendment, as we have seen, prohibits these shipments. Both enactments emanated from the Congress of the United States, to which

power had been delegated the jurisdiction to control interstate commerce. Interstate shipments of intoxicating liquors are permitted when, and only when, they pass from one State into another State, the latter of which does not make the receipt of such liquors unlawful. Thus construing in harmony both of the Federal statutes mentioned, and the statute law of Georgia, a shipment of whisky may lawfully pass through the State of Georgia on a railway train engaged in interstate commerce, where it begins in the State of Kentucky and the end of the shipment is destined to be in the State of California. Such are the facts appearing in the present case.

4. The fourth headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*

HINES, J. I concur specially in the result reached in this case, because the liquor involved was not contraband. Under the police power of this State contraband liquor can be seized and confiscated, whenever found within .the limits of this State, although the same may be moving as an interstate shipment by rail carrier. There is no property in intoxicating liquor, under circumstances which render it contraband, which is protected by the provision of the interstate-commerce clause of the constitution of the United States, against the police power of the State; and under this power such liquor can be seized and destroyed under any and all circumstances. I do not understand that there is anything in the opinion holding the contrary; but I wish to make my position in this matter clear.