RYMAN *v.* LEGG, sheriff.

No. 9841. SEPTEMBER 21, 1934.

*Blair & Gardner,* for plaintiff.

*H. G. Vandiviere, solicitor-general,* and *J. G. Roberts,* for defendant.

RUSSELL, C. J. The answer of the sheriff in this case was based, in part, on the contention that the act of Congress approved March 22, 1933, entitled "An act to provide revenue by the taxation of certain non-intoxicating liquor, and for other purposes" (Session Laws of Seventy-third Congress, pp. 16-20), commonly known as the "beer act," was unconstitutional and void because in contravention of the eighteenth amendment to the constitution of the United States. This contention was upheld by the judge of the superior court, who thereupon refused to enjoin the sheriff from condemning and destroying the shipment of 3.2 per cent. beer. The exception is to the refusal of the injunction.

By the act of Congress commonly referred to as the beer act Congress undertook to legalize the transportation, manufacture, and sale of beer such as that involved in the present case. It is insisted that this act is invalid, because in contravention of the eighteenth amendment as it existed at the time of the passage of the act. In view of the decisions of the Supreme Court of the United States in Ruppert *v.* Caffey, 251 U. S. 264 (40 Sup. Ct. 141), and National Prohibition Cases, 253 U. S. 350 (40 Sup. Ct. 486, 588), it appears that Congress has the power, within certain

limits, to declare what percentage of alcohol a beer might contain without being deemed intoxicating, and that the passage of this act was within the scope of the power. While the act under consideration contains no express declaration that 3.2 beer is not intoxicating, this must necessarily be implied, for the act is described in its title as "An act to provide revenue by the taxation of certain non-intoxicating liquor," etc. There is a presumption that Congress would not have undertaken to legalize something which was prohibited by the constitution, and therefore the act must be deemed to declare that 3.2 beer is non-intoxicating. While the congressional definition would not be binding upon the States where only local laws are concerned, it must be given precedence in matters of interstate commerce, if such legislation is allowable under the constitution. In Leisy v. Hardin, 135 U. S. 100, 125 (10 Sup. Ct. 681, 34 L. ed. 128), Mr. Chief Justice Fuller, delivering the opinion of the court, said: "Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we can not hold that any articles which Congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by State laws amounting to regulations, while they retain that character." See also Austin v. Tennessee, 179 U. S. 343 (21 Sup. Ct. 132, 45 L. ed. 225).

By the act of March 22, 1933, supra, 3.2 beer was necessarily recognized as a legitimate article of interstate commerce, with the proviso that it should not be introduced "into any State, territory, or district" for the purpose of being "received, possessed, sold, or in any manner used . . in violation of any law of such State, territory, or district." . Section 6, act of March 22, 1933, supra. The present case does not involve a shipment or carriage "into" the State of Georgia, for the judgment of the superior court is not based upon the evidence. A similiar question was involved in U. S. v. Gudger, 249 U. S. 373 (39 Sup. Ct. 323), where it was held that "The prohibition of the Reed amendment of March 3, 1917 (39 St. at L. 1069, chap. 162, Comp. Stat. 1918, sec. 8739a), sec. 5, against transporting intoxicating liquor in interstate commerce into any State or territory the laws of which prohibit the manufacture and sale of intoxicating liquors for beverage purposes, does not include the movement through a dry state as a mere incident to the transportation to another State, whether such transportation be by per-

sonal carriage or by common carrier." See also Heyman v. Southern Railway Co., 203 U. S. 270 (27 Sup. Ct. 104, 51 L. ed. 178); Adams Express Co. v. Kentucky, 238 U. S. 190 (35 Sup. Ct. 824, 59 L. ed. 1267); Rose Co. v. State, 133 Ga. 353, 359 (65 S. E. 770, 36 L. R. A. (N. S.) 443). Transportation "into" a State means transportation to a point of destination within the State, and not carriage through the State. In Gaines v. Holmes, 154 Ga. 344 (114 S. E. 327, 27 A. L. R. 98), this court held: "There is no law of this State which makes contraband or unlawful the transportation of intoxicating liquors on a through bill of lading on an interstate railway train from one State to another State, merely passing through this State, where there has been no delivery to any person within this State, nor any access or control exercised by any person within this State, except the common carrier in the act of transportation. Moreover, if the prohibition statutes were construed to apply to such interstate shipments, such State law would be invalid and void because in conflict with the interstate commerce clause of the constitution of the United States." The principle recognized in the Gaines case is not altered by the character of the vehicle or means of transportation. As will have been observed, it was held in the Gudger case, supra, to be interstate commerce even by "personal carriage." In the previous case of Kirmeyer v. Kansas, 236 U. S. 568 (35 Sup. Ct. 419, 59 L. ed. 721), it was held that whether commerce was interstate or intrastate must be tested by the actual transaction, and does not depend upon the methods employed. In that case the carriage was by wagons; and in the opinion it was said: "That the traffic moved by horse-drawn wagons from a point near the State line, instead of by railroad from a greater distance, does not change the applicable rule."

One ground on which the opinion of the learned trial judge in this case is based is that the Federal authorities have no control over the State highways; and that since it is the law of Georgia (Ga. L. Ex. Sess. 1917, pp. 7-16) that all vehicles and conveyances shall be seized which are used on any of the public highways or private ways of this State in conveying any liquors or beverages the sale or possession of which is prohibited by our laws, which would include 3.2 beer (Ga. L. Ex. Sess. 1915, pp. 77, 79), the seizure in question should be upheld as an enforcement of the

State's right and declared policy in the use of its public roads. In his opinion the learned trial judge says: "The streets and highways of the State are constructed largely with funds derived from the public by way of taxation; they belong to the public, and are public property. The use of such streets or highways is not absolute and unrestricted, but is subject to the legislative power of reasonable regulation. Their primary and preferred use is for private purposes. Their use for purposes of gain is special and extraordinary, and this the legislature may generally either prohibit or condition as it sees fit. . . The law of this State prohibits the transportation from any point without this State to. any point within this State, or from place to place within this State, by any common carrier, corporation, firm, or individual, of any of the prohibited liquors or beverages defined in Georgia Code (1926), section 448(2), and subjects to confiscation 'vehicles and conveyances' thus used 'on any of the public roads or private ways of this State.' . . There can be no dispute in this case that the beverage or liquors here involved come within the definition of 'prohibited liquors' as defined in Georgia Code (1926), section 448(2), and the evidence shows that they were transported over and along the public highways of this State; and under the decisions first hereinbefore cited the State of Georgia had ample authority to prohibit the transportation thereof over and along the public highways of the State; and having done so, it is immaterial whether the transportation thereof be in interstate or intrastate commerce, or whether such transportation be by common carrier or by private individual. 'The mere fact that a legitimate police regulation of a State may incidentally affect interstate commerce, to a limited degree, does not render such State legislation obnoxious to the interstate commerce clause of the Federal constitution, not being a needless intrusion upon the domain of Federal jurisdiction, or strictly a regulation of interstate commerce.' *Armour* v. *Augusta,* 134 *Ga.* 178 (67 S. E. 417); *Cureton* v. *State,* 136 *Ga.* 91 (70 S. E. 786). The plaintiff's petition alleges that the beer here involved contains 3.2 per centum of alcohol, and it appears that the same was being transported for beverage purposes, and not for scientific, sacramental, medicinal, or mechanical purposes. The courts of this State may take judicial cognizance, as a matter of common knowledge, that any beer or other liquor of similar potableness which contains such an amount

of alcohol is intoxicating . . ; and the court so holds with reference to the beverages here involved." The court then proceeds to declare that the "beer bill" is unconstitutional and void as being violative of the eighteenth amendment to the Federal constitution.

It is doubtless true that reasonable State regulations intended primarily to promote safety upon the highways and conservation in their use would not offend the commerce clause of the Federal constitution; but it is a different thing for the State to declare a prohibition against the transportation of that which the Congress within its appropriate sphere recognized as an article of interstate commerce. The laws of Georgia to which reference is made in the opinion of the superior court were not, in our opinion, intended to apply to such commerce. But, regardless of the extent to which the State might be authorized to go in protecting its highways, it is clear that the State prohibition laws were enacted for the purpose of promoting temperance and suppressing the evils of intemperance, with no intention or design on the part of the legislature to protect or conserve the highways. Cf. Brannan v. Titusville, 153 U. S. 302 (14 Sup. Ct. 829, 38 L. ed. 719); Buck v. Kuykendall, 267 U. S. 307 (45 Sup. Ct. 324); Frost Trucking Co. v. Railroad Commission of California, 271 U. S. 583 (46 Sup. Ct. 605). It may be said that abuses will arise under the guise of interstate commerce in such commodities. If it appears that the claim of such commerce is a mere subterfuge, the laws of the State will apply, as in *Marler* v. *Vandiviere,* 178 *Ga.* 115 (172 S. E. 33). We can not concur in the opinion of our learned brother of the trial bench, in view of the rulings of the Supreme Court of the United States in Ruppert v. Caffey, Leisy v. Hardin, supra, and other decisions to which we have referred. It affirmatively appears that he made no finding on the evidence, but refused an injunction upon erroneous conclusions of law. In these circumstances the judgment refusing the injunction must be reversed, and the case remanded for a further hearing upon the evidence, consistently with principles above enunciated.

*Judgment reversed. All the Justices concur.*

GILBERT, J., concurring specially. I concur in the judgment of reversal, but on different grounds from that stated by the majority of the court. It is well settled by this court that constitutional

questions will not be decided unless necessary to a proper decision of the case. I do not deem it necessary to decide the constitutional questions, because the real question is whether the beer in question was bona fide in interstate commerce. I concur in the judgment of reversal on the ground that the trial court erred in not deciding whether the beer, when seized by the sheriff, was being transported bona fide through the State in interstate commerce. No matter what may be the claims, or under what name the shipment is called by parties engaged in the transportation, the beer and the truck may, under the law of Georgia, be seized and confiscated, if in fact the transportation was not bona fide interstate commerce. For the present I withhold any expression of opinion on the questions of law discussed in the majority opinion, except as follows: In referring to *Gaines* v. *Holmes,* 154 *Ga.* 344 (supra), the court seems to overlook certain very clear distinguishing characteristics in that case as compared to this case. In citing U. S. *v.* Gudger, 249 U. S. 373 (supra), the majority fail to note in that connection that this court in *Gaines* v. *Holmes,* supra, stated: "In citing the case of U. S. *v.* Gudger, which had reference to whisky carried by a passenger traveling on a through railroad-ticket, we do not mean to hold that one riding on a railway-train and on a through ticket, passing through this State, could legally transport in his valise or in his pocket liquor to which he could have access. That question is not made in this case. The case is cited purely for the purpose of showing the meaning of the words 'into the State.'"