GARRETT v. FAUBUS, GOVERNOR.

5-1824

Dissenting opinion delivered April 27, 1959.

ED. F. McFADDIN, Associate Justice, dissenting. On May 17, 1954 the United States Supreme Court delivered its first decision in *Brown* v. *Board of Education* (347 U. S. 483, 98 L. Ed. 873, 74 S. Ct. 686), which was most unfortunate, and which many believe to be entirely unconstitutional.[1] That decision upset social conditions that had existed in the South from the beginning of the American Union: it decreed racial integration in the public schools. Immediately after that decision, there began in the Southern States — of which Arkansas is proud to be a part — a determined and never-to-be-ended campaign to prevent racial integration in the public schools. One of the measures adopted by the Arkansas Legisla-

---

[1] Under our system of separate but equal schools between the white and negro races, as repeatedly recognized by the United States Supreme Court, the Southern Negro has enjoyed educational facilities and opportunities for racial advancement far superior to those enjoyed by members of that race crowded into ghettos in northern cit'es. If it would accomplish anything constructive, I would write an entire treatise on why *Brown* v. *Board of Education* is unconstitutional: it is an invasion of the Legislative powers of the Congress, as well as an invasion of the powers reserved to the States in matters of education and local concern. But nothing can be gained, in a decision of the present case, by a further discussion of *Brown* v. *Board of Education;* because I base my views entirely on the Constitution of the State of Arkansas.

ture to prevent such racial integration was Act No. 4 of the Second Extraordinary Session of 1958; and that Act (hereinafter called "Act No. 4") is the only legislation now before us on this appeal.

The present suit was filed in the Pulaski Chancery Court by Mrs. Garrett (appellant here) against Orval E. Faubus (appellee here), as Governor of Arkansas, seeking to have Act No. 4 declared unconstitutional as violating Article 14 of the Arkansas Constitution, and also as violative of the Federal Constitution. When a demurrer was sustained and the complaint dismissed, this appeal ensued. The appellant here argues only one point: that Act No. 4 is violative of Article 14 of the State Constitution.[2] In the amicus curiae brief it is urged that Act No. 4 violates not only Article 14 of the Arkansas Constitution, but also Article 2, Section 18 of the Arkansas Constitution, and also the Fourteenth Amendment to the Federal Constitution. Counsel for appellee joins issue with the amicus curiae brief on all points; and also urges most strenuously that Act No. 4 is within the police power of the State. I never reach any Federal question. My views are these: (1) the Act No. 4 violates Section 1 of Art. 14 of the Arkansas Constitution; and (2) the claim of "police power" cannot prevent the invalidity of Act No. 4. Now I will elucidate.

1. *Act No. 4.* The Act is captioned: "An Act to Provide the Procedure Under Which the Governor May Order to be Closed the Schools of any School District; and For Other Purposes". The Act provides in Section 1 that the Governor may, by Proclamation, order any school, or all schools, of a District to be closed immediately and call a Special Election to be held in the School District within thirty days thereafter, whenever, *inter alia*:

---

[2] The entire argument in the appellant's brief is: "The appellant stands on the plain language of Article 14 of the State Constitution. It is our contention that the plain language of that Article is subject to but one interpretation, and that is that the State shall ever maintain a general, suitable and efficient system of free schools. Hence, any legislation, or official act thereon, closing a school, except for the peace, health and safety of the public, is diametrically opposed to Section 1 of Article 14. The Court will take judicial knowledge of the reason for the closing of the schools involved. The lower court should be reversed with directions to sustain the prayer in the complaint."

"(b)  integration of the races in any school, or all schools, of the school district has been decreed by an order of any court, and pursuant to the enforcement thereof, the President, or other officer of the United States Government, whether of the executive, legislative, or judicial branch, causes troops, whether regular troops or the federalized National Guard, United States Marshals, or other force at the federal level, to be stationed in, on or about any such public school; or

"(c)  he shall determine that a general, suitable, and efficient educational system cannot be maintained in any school district because of the integration of the races in any school within that district."

The Act No. 4 also provides in Section 2:  that when a school has been closed by the Governor in accordance with Section 1 of the Act, then there shall be an election — open to all qualified electors of the school district — and the voting shall be for or against racial integration of *all* of the schools within the school district; that if a majority vote for racial integration, then the schools shall be opened;  ". . . otherwise, no school within the district shall be integrated".  Section 4 of the Act says:  "Any school closed by executive order authorized by this Act shall remain closed until such executive order is countermanded by Proclamation of the Governor filed with the Secretary of State and the Board of Directors of the School District."

Thus it is clear that whether there will be a school in operation in a district depends on:  (1) whether the Governor closes the school and calls an election;  (2) how the majority votes on the integration issue; and  (3) when the Governor issues a Proclamation for reopening of the schools.[3]  Stated another way, Act No. 4 makes the continued maintenance of the schools in any school

---

[3] Under Act No. 4 the Governor of Arkansas issued a Proclamation (of which we take judicial notice) on September 12, 1958 closing the public senior high schools of the Little Rock School District; and another Proclamation on September 16th, calling an election for September 27, 1958.  At that election the majority vote was against integration; so the four public senior high schools of the Little Rock School District have been closed ever since September, 1958 and an entire school year will soon be completed with no public senior high schools having been maintained in the Little Rock School District.

district dependent on: (a) attempted integration; (b) Proclamation of the Governor; and (c) vote of the electors in the school district on the issue of integration.

II. *The Arkansas Constitution.* Now, let us see how Act No. 4 measures up to Section 1 of Art. 14 of the Arkansas Constitution, which reads:

"Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons·in the State between the ages of six and twenty-one years may receive gratuitous instruction."

Note the words: ". . . the State shall ever *maintain* a general . . . system of free schools . . . ." We have many cases decided by this Court construing and applying this section of the Constitution. Some are: *Maddox* v. *Neal,* 45 Ark. 121; *Dickinson* v. *Edmondson,* 120 Ark. 80, 178 S. W. 930, Ann. Cas. 1917C 913; *Krause* v. *Thompson,* 138 Ark. 571, 211 S. W. 925; *School Dist. No.* 65 v. *Banks,* 144 Ark. 34, 221 S. W. 1060; and *Dowell* v. *School Dist.,* 220 Ark. 828, 250 S. W. 2d 127. In *Maddox* v. *Neal (supra), Chief Justice* COCKRILL said: "Without schools there could be no school system, and the directors cannot dispense with the system . . . It is the clear intention of the Constitution and statutes alike, to place the means of education within the reach of every youth. Education at public expense has thus become a legal right extended by the laws to all the people alike . . . The opportunity of instruction in the public schools, given by the statute to all the youths of the State, is in obedience, as we have seen, to the special command of the Constitution . . . ."

In *Dickinson* v. *Edmondson (supra),* Chief Justice McCULLOUGH said: "No one can doubt that those who framed this provision had in mind that schools were to be conducted during each year . . . The command of the Constitution is to provide by general laws 'for support of common schools', and that necessarily meant to maintain a system of free schools as complete as can be,

and continuous in its operations . . . The establishment of high schools is within the limits of common school education because it merely raises the standard of popular education. High schools are free schools within the meaning of the Constitution . . ."

In *Krause* v. *Thompson* (*supra*), Chief Justice McCullough said: "School facilities must, of course, be afforded where taxation for maintenance of the schools is imposed . . ." In *School Dist. No. 65* v. *Banks* (*supra*), the Legislature had passed a law permitting a Special School District in Logan County to charge tuition; and the Act was held unconstitutional by this Court as being in conflict with Art. 14 § 1 of the Constitution which guarantees that instruction be "gratuitous". Mr. Justice Hart said:

"As we have already seen, under the plain mandate of our Constitution above quoted and referred to, the gratuitous instruction of all persons in the school district between the ages of six and twenty-one years is guaranteed in the public schools. The terms 'public schools' or 'common schools' are used in our Constituion to denote that such schools are open to all persons within the approved ages rather than to indicate the grade of a school, or what may or may not be taught therein."

A further review of opinions involving Section 1 of Art. 14 of the Arkansas Constitution is unnecessary. The rationale of our holdings is that the constitutional language means what it says, and that the state ". . . shall ever maintain a general . . . system of free schools whereby all persons . . . between the ages of six and twenty-one . . . may receive instruction . . ." That is the constitutional mandate that the People of Arkansas gave to the Legislature and the officials of this State. "To maintain" a high school means to keep it open and operating:[4] that is what the Constitution says; and tax money is being collected in every school district in Arkansas to *maintain* the schools. "It

---

[4] Webster's Unabridged Dictionary says that "maintain" means, *inter alia*, ". . . to hold or keep in any particular state or condition . . . to support . . . not to suffer to fail or decline . . . to bear the expense of . . . to carry on . . . to give support to . . ."

is not the form, but the operation and effect, which determines the constitutionality of a statute." (*Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617.)

As heretofore shown, Act No. 4 allows the schools to be closed indefinitely as long as the threat of racial integration exists, and allows a vote to be taken — on a local option basis — to determine when and under what conditions the schools shall be reopened. Art. 14 of the Arkansas Constitution gives no such power to the Governor, or any other person, to close the schools. Neither does the Constitution provide for local option to defeat the schools. So I maintain that Act No. 4 violates Section 1 of Art. 14 of the Arkansas Constitution. I can see it no other way.

But it has been said that when we adopted our Constitution in 1874, the rule of "separate but equal" governed in school matters, and that when the United States Supreme Court revolutionized that rule by the decision of *Brown* v. *Board of Education* in 1954, then the State of Arkansas had a right to change its policy on public education. It is true that the State has a right to change its policy on public education: but the point is, that Art. 14 of our Constitution has *not* been repealed by vote of the People of Arkansas,[5] and until Art. 14 of the Constitution is repealed, this Court must continue to test legislation by the Constitution as it is, and not by what we think it may be in the future. Two wrongs will never make a right: just because the Supreme Court of the United States went contrary to the Federal Constitution in *Brown* v. *Board of Education,* is no reason or excuse why this State Court should go contrary to our State Constitution. Until the People of Arkansas repeal Art. 14 of our Constitution, this Court should obey Art. 14,

---

[5] Amendment No. 44 to the Arkansas Constitution was not mentioned in any of the briefs. That Amendment certainly does not expressly repeal Section 1, Art. 14 of the Arkansas Constitution. Neither does Amendment No. 44 impliedly repeal said Section 1 of Art. 14, because implied repeals are not favored, either in constitutional or statutory construction (16 C.J.S. p. 35 and p. 131). One might just as well argue that the Amendment No. 44 impliedly repeals Art. 2 of the Arkansas Constitution (the declaration of rights) as to argue that it impliedly repeals Art. 14 of the Arkansas Constitution, which guarantees the maintenance of free schools.

which guarantees that the State shall maintain free schools. Act No. 4 violates that constitutional guaranty. If the People of Arkansas were to strike Art. 14 from the Constitution, then the schools may be closed under some legislation similar to Act No. 4. But until Art. 14 of the Constitution is repealed, then it is my solemn and sincere view that Act No. 4 is violative of the Arkansas Constitution.

III. *Police Power.* These words are used to express various legal concepts, and a distinction of use is necessary. In this case, the words, "police power", have at least three different concepts:

(1) The power reserved to the States, as contrasted to the Federal power:

(2) The inherent power of the State Legislative department; and

(3) The emergency powers of the Legislative or Executive Department.

In the present case I am not concerned with the first application (*i. e.* State v. Federal) because I never reach any Federal question; and all the cases about "reserved powers of the State" are entirely beside the mark, as I see the case. Act No. 4 violates the State Constitution; and so I never reach any Federal question. I will, however, discuss concepts 2 and 3 (*supra*) to show that Act No. 4 cannot be upheld on the basis of police power.

The rule is recognized everywhere that the police power of the State Legislature is limited by the State Constitution. In 16 C. J. S. 949 "Constitutional Law" § 196, cases from over a score of jurisdictions are cited to sustain this statement: *"Limited by state constitution.* However broad the scope of the police power, it is always subject to the rule that the Legislature may not exercise any power that is expressly or impliedly forbidden to it by the State Constitution, nor may constitutional guaranties and limitations be set aside by an application of such power, because of changed economic, sociological, or political conditions". In *Gaines* v.

*Holmes,* 154 Ga. 344, 114 S. E. 327, 27 A. L. R. 98, the Supreme Court of Georgia quoted this language: " 'If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety . . . is a palpable invasion of rights secured by the fundamental law, it is the duty of the Courts to so adjudge, and thereby give effect to the Constitution' ". In *People* v. *Chicago, M. & St. P. R. Co.,* 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610, the Supreme Court of Illinois quoted this language: " '. . . no exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process, and equal protection of the laws, and should not override the demands of natural justice.' " In *Goldman* v. *Crowther,* 147 Md. 282, 128 A. 50, 38 A. L. R. 1455, the Maryland Court of Appeals quoted this language regarding the police power: " 'But necessarily it has its limits and must stop when it encounters the prohibitions of the Constitution' ". In Cooley on "Constitutional Limitations" 8th Ed. p. 1229, in speaking of the police power, this appears: "But the power is subject to the limitations imposed by the . . . State Constitutions upon every power of government, and it will not be suffered to invade or impair the fundamental liberties of the citizens".

In short, the Arkansas Legislature cannot, under the guise of police power, enact legislation contrary to the Arkansas Constitution. To hold otherwise would make the Constitution of no protection. So, in the case at bar: the guaranty contained in Section 1 of Art. 14 of the Arkansas Constitution is for the *maintenance* of schools; and this guaranty cannot be nullified by the Legislature under the guise of the police power, because such power does not extend to legislation violating our own Constitution.

I come then to concept 3 of the police power (*i. e.* the emergency power). There is a line of cases which says that statutes may be enacted by the Legislature, or Proclamation made by the Governor, to cope with unusual emergencies and exigencies. This is discussed in 11 A.M. Jur. 979, "Constitutional Law" § 252, "Emer-

gency Police Legislation". But the cases on such emergency police legislation recognize that a law dependent upon the existence of an emergency can only apply to an *emergency situation*; and that such a law ceases to operate when the emergency is past; and that it is the duty of the Courts to decide as to the existence and the end of the emergency.

Of course, in time of plague, pestilence, or other great danger, schools can be closed as health measures or police measures; but this is only for the emergency. In the case at bar, the closing is permanent — not merely until some plague or pestilence or danger has subsided, but — the schools will be closed as long as there is a threat of racial integration in the schools. That is too long. An entire generation could grow up — and probably will — while we are striving to get a Supreme Court of the United States that will overrule *Brown* v. *Board of Education* and return to the constitutional doctrine of "separate but equal". Meantime, are the schools to remain closed? They have already been closed for nearly a whole school year. Under Act No. 4 they could be closed for an entire generation. Thus it is clear that Act No. 4 cannot be sustained under any theory of "Emergency Police Powers", because we are not dealing with the kind of an emergency that permits the use of "Emergency Police Powers". Rather, we are dealing with a condition that has already existed since 1954 and will continue to exist until either the United States Constitution is amended or the United States Supreme Court overrules *Brown* v. *Board of Education.*

Two wrongs do not make a right. Let the Supreme Court of Arkansas stay within the Arkansas Constitution, even if the United States Supreme Court has not stayed within the Federal Constitution. Section 1 of Art. 14 of the Arkansas Constitution says: ". . . the State . . . shall ever maintain a general . . . system of free schools . . ." The State is not "maintaining", and never will "maintain" such a system under Act No. 4; and so I sincerely and solemnly say that Act No. 4 violates Section 1 of Art. 14 of the Arkansas Constitution and should be stricken.