No. 11,951.

GABRIEL *v*. BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO.

Decided April 30, 1928.

Proceeding under the declaratory judgment act. Judgment for defendant.

*Affirmed.*

1. PLEADING—*Declaratory Judgment Act.* In an action under the declatory judgment act (c. 98, S. L. '23) to determine the validity of a contract, the complaint failing to allege that the validity of the contract had been questioned, or that a question had arisen under it, no cause of action was stated.

*Error to the District Court of Boulder County, Hon. Robert G. Smith, Judge.*

Messrs. GABRIEL, MILLS & MILLS, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. CHARLES ROACH, Deputy, Mr. JOHN C. VIVIAN, Assistant, Mr. JEAN S. BREITENSTEIN, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court and we hereinafter refer to them as plaintiff and defendant.

This suit was brought by Clifford W. Mills, under our declaratory judgments act, to determine the validity of a contract. Defendant demurred to the complaint on the grounds of insufficient facts and want of jurisdiction. The demurrer was sustained and judgment entered against the plaintiff for costs. To review that judgment he prosecutes this writ.

The contract in question reads as follows:

"Memorandum of Agreement by and between the Regents of the University of Colorado, hereinafter designated as the 'Regents' and Clifford W. Mills, hereinafter designated as 'Trustee,' Witnesseth:

For and in consideration of the covenants and agreements hereinafter made by the parties hereto, the trustee agrees to raise funds for and to erect and furnish dormitories for women upon the campus of the University of Colorado, said dormitories to be erected according to plans which shall be approved by the regents.

In consideration of the agreement on the part of the trustee to furnish funds and to erect dormitories, the regents agree that the trustee shall have the sole use of

said dormitories thus built for rental purposes to women students in the University and none other, and the regents further agree that this use in the trustee shall con-. tinue until such time as he or his assigns shall be fully repaid out of the rentals to be collected for any sums advanced for the purpose of building said dormitories, and the regents further agree to heat and light the said dormitories at their own expense, and to collect the rents therefrom for the trustee, and to apply the funds derived from rentals, first, upon the payment of interest at a rate not to exceed $5\frac{1}{2}$ per cent per annum from any funds provided by the trustee for the purpose of erecting said dormitories, second, to provide a sinking fund to replace furniture as it may be needed, and to pay the surplus derived from rentals over and above the interest thus paid and the sinking fund to the said trustee or his assigns to apply upon the principal indebtedness.

It is mutually understood and agreed that the said dormitories shall be run under rules and regulations to be made by the regents, and that no one shall be employed in, around or about the dormitories except by and with the approval of the regents.

It is further mutually understood and agreed that the said trustee shall raise for the purpose of erecting said dormitories, a sum of six hundred thousand and no/100 ($600,000.00) dollars net, at a cost not to exceed 7 per cent of the principal amount of six hundred thousand and no/100 ($600,000.00) dollars, said cost of procuring the said funds to include all charges for sale of securities, legal expenses and trustee's fees, and

It is expressly understood and agreed that the trustee shall receive no remuneration for the conduct of the said dormitories or any part thereof, except as herein specifically provided.

In Witness Whereof, the parties of the first part have caused these presents to be signed by its president and attested by its secretary, and the party of the second part

has hereunto set his hand and seal this 13th day of October, A. D. 1926.

> Regents of the University of Colorado,
>> By George Norlin, President.
>
> Attest:
>> Frank H. Wolcott, Secretary.
> (Corporate Seal)
>> Clifford W. Mills.''

The complaint alleges ''that there is a question of the validity of said contract in that: It may be contended that the University has no authority to lease its property;'' that the ''contract may be in violation of sections 1, 3 and 5, article 11, of the Constitution of the State of Colorado;'' that ''the Board of Regents of the University of Colorado may not have authority to execute this contract;'' and plaintiff prays that the court ''determine the validity of the contract.'' It will be observed that said contract is dated October 13, 1926. This complaint was filed three days later. In November following plaintiff Mills was elected a member of the Board of Regents of the University. Thereafter he assigned said contract to Gabriel and the latter was substituted as plaintiff herein.

The Attorney General says: (a) That this complaint states no cause of action under our declaratory judgments act; (b) that the court was without jurisdiction because the action, if any was stated, was against the state. An examination of the transcript discloses that the trial court, having sustained ''a,'' properly ignored ''b.'' If no cause was stated the identity of the defendant in one which might have been stated was wholly immaterial.

Section 2, chapter 98, L. 1923 (the act in question) provides that: ''Any person interested under a  *   *   *  written contract  *   *   *  may have determined any question of construction or validity arising under the instrument  *   *   *.''

The Attorney General says the complaint is insufficient, because the state cannot be compelled to carry out a building contract, because the board of regents cannot encumber the state's property, and because the contract is void for uncertainty. But if these are questions "arising" under the contract their adjudication is the very purpose of the act. The real question, and the only one considered by the learned trial Judge, is, "Have such questions 'arisen'?" The complaint does not say so. This act was not intended to repeal the statute prohibiting judges from giving legal advice, nor to impose the duties of the profession upon the courts, nor to provide advance judgments as the basis of commercial enterprises, nor to settle mere academical questions. All these things are, however, accomplished by the statute if this complaint is good. It says, "It may be contended," not that any one has done so; that the contract "may be in violation" of the Constitution, not that any one so maintains; that the regents "may not have authority to execute this contract," not that either party has taken that position; that plaintiff is about to invest a large sum of money but before doing so "desires to have the validity of the contract determined," not that its validity is disputed. It is perfectly evident that this is no plea that a question has "arisen" under this contract. At most it is the expression of a fear that one may arise. We considered this same question and the same word in relation to paragraph (c) of section 4 of the same act, in *Mulcahy v. Johnson,* 80 Colo. 499, 511, 512, 252 Pac. 816, where this court, speaking through Mr. Justice Campbell, declined to determine those questions "which have not yet arisen and which may never arise" or "to answer speculative inquiries." All this was clearly and repeatedly pointed out by the trial judge in ruling upon the demurrer. He then said, "It is apparent from the pleadings, admissions and statements in the briefs, that the declaratory judgments act was the father of this contract and that the contract was made for the purpose

of invoking the jurisdiction of the court." If a question of the validity of this contract had in fact "arisen" that was the time to ask leave to amend and clearly so state. The failure to do so indicates inability and fully justifies the trial court's characterization of this instrument.

We cannot here decide any other of the various questions raised, however desirable it might be to have them settled, unless we are now willing to answer questions "which have not yet arisen and which may never arise" and reply to mere "speculative inquiries." We cannot thus permit the courts to be converted into legal aid bureaus. The judgment is affirmed.