No. 16,238.

GETTMAN ET AL. *v.* BOARD OF COMMISSIONERS
OF MORGAN COUNTY.
(221 P. [2d] 363)

Decided July 17, 1950.

Mr. MAX D. MELVILLE, Mr. WALTER F. SCHERER, Mr. EDWARD E. PRINGLE, for plaintiffs in error.

Mr. GEORGE A. EPPERSON, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFFS, alleging that they were engaged in the

dispensing of fermented malt beverages and malt and vinous liquors in the county of Morgan, brought this action in behalf of themselves and other persons so engaged, asking declaratory judgment as to the validity of a resolution adopted by the board of county commissioners prohibiting the sale of malt or vinous liquors and fermented malt beverages between the hours of 12:00 midnight on Saturday and 8:00 A. M. on Monday. Defendant admitted the essential allegations and both plaintiffs and defendant moved for summary judgment. Defendant's motion was granted and the resolution adjudged valid.

Plaintiffs here challenge the power of the board of county commissioners: I. To prohibit the sale of malt or vinous liquors during hours when not prohibited by statute, as attempted by its resolution; and, II. To prohibit the sale of "fermented malt beverages" as so attempted. Under our statutes the term "fermented malt beverages" means any such beverages containing not more than 3.2 per cent of alcohol by weight, and their manufacture and sale are regulated by separate laws from those regulating the manufacture and sale of other alcoholic liquors, which are classified as malt, vinous and spirituous liquors. No challenge is interposed as to the nature or appropriateness of the proceeding. The controversy is bona fide; the facts are not in dispute; the validity of the resolution of the board of county commissioners here involved is dependent on the construction of statutes; its prompt determination is a matter of public importance and the parties here contesting have a real and adverse interest therein.

I. As to the power of the county commissioners to prohibit the sale of malt or vinous liquors, it is insisted by defendant in error that this issue is not raised here, nor was it determined by the trial court, inasmuch as defendant in its answer, while admitting that some of the individual plaintiffs were engaged in dispensing fermented malt beverages, denied that all of said in-

dividuals were so engaged. However, there is no denial of the allegation that plaintiffs are engaged in the dispensing of malt and vinous liquors, and even if there were denial, when defendant filed its motion for a summary judgment upon the ground "that the sole question involved is the legality of the resolution passed by the defendant," and such motion was sustained, any other issue was waived. As to the sale of liquors other than 3.2 per cent beer, plaintiffs in error urge: (1) That the legislature may not delegate to county commissioners power to regulate such sales; (2) that the legislature has in no way attempted so to delegate that power; and (3) that the regulation here involved is in conflict with the statutory provisions for hours of sale and must yield to them.

By virtue of Article XXII of our Colorado Constitution, the manufacture, sale and distribution of all intoxicating liquors shall "be performed exclusively by or through such agencies and under such regulations as may hereafter be provided by statutory laws of the State of Colorado." Under authority of that amendment, the legislature enacted the Liquor Code of 1935, being sections 15 to 47, chapter 89, '35 C.S.A., wherein, by paragraph 5 thereof, being section 19, chapter 89, '35 C.S.A., it is provided that, "For the purpose of regulation and controlling the licensing of the manufacture and sale of malt, vinous, and spirituous liquors, as provided by this article, there is hereby created the state licensing authority. The said state licensing authority shall consist of the secretary of state." Among the duties of the state licensing authority, as provided by amended section 20 of said chapter 89 (chapter 159, S.L. '41), are the following: "(b) To make such general rules and regulations and such special rulings and findings as he may deem necessary for the proper regulation and control of the manufacture, sale and distribution of malt, vinous or spirituous liquors and the enforcement of this Article, in addition thereto, and not

inconsistent therewith, and may alter, amend, repeal and publish the same from time to time."

We find in the statute no attempt to delegate to the board of county commissioners any authority of regulation. Authority is there given to the board to issue licenses in situations as here involved, upon presentation of a state license and payment of fee. Authority also is given to refuse to issue any license for good cause. Section 23 of the statute provides that, "Before granting any license" the board "shall consider the reasonable requirements of the neighborhood, the desires of the inhabitants, * * * and all other reasonable restrictions which are or may be placed upon the new district or districts * * * by the board of county commissioners." However, the "reasonable restrictions" contemplated are those which have been placed upon districts (such as zoning restrictions), and are to be considered "before granting any license," rather than restrictions upon sales, as to hours or otherwise, which have to do with the operation of the business after a license has been granted, as contended by defendant in error. The power to grant licenses and to suspend and revoke them for violation of statutes, rules or regulations does not by necessary inference include the authority to make such rules and regulations, especially where, as here, a separate state licensing authority is established with power to make rules and regulations.

It would appear from the provisions of Article XXII of our Constitution, hereinbefore quoted, that the power of regulation of the sale of intoxicating liquors was exclusively in the legislature, to be declared only by "statutory laws." If, under such constitutional provision, the legislature has any power of delegation of its authority to regulate, such power has clearly been delegated to the secretary of state as state licensing authority, who by statute has been given the duties and authority "to make such general rules and regulations and such special rulings and findings as he may deem

necessary for the proper regulation and control" of the sale of such liquors. Accordingly, we must conclude that the board of county commissioners has no authority to regulate the sale of malt and vinous liquors, other than 3.2 per cent beer, but only to grant, suspend or revoke licenses as provided by statute. Whether the attempted regulation was in conflict with the statutory provision as to hours of closing need not be determined.

■ II. As to the authority of the county commissioners to restrict the sale of "fermented malt beverages," (3.2% beer), as here attempted, our statute, Article 1, chapter 89, '35 C.S.A., provides that the licenses required in counties for sale of "fermented malt beverages" shall be issued by the board of county commissioners of the county. It further provides that the authorities having the power to issue licenses "shall likewise have the power to make such reasonable rules and regulations with respect to the sale of fermented malt beverages as they may deem proper, not inconsistent with the provisions of this article." There is no contention made that the regulation with which we are here concerned is unreasonable, and the attempted delegation of authority to the county commissioners in the premises is plain. Therefore, the regulation was valid if the legislature could delegate authority to the board of commissioners. However, plaintiffs in error urge, first, that the legislature has no power so to delegate right of regulation and, second, that if such power exists, the regulation here involved is in conflict with the statutory provisions and must yield to them.

As to the first contention, we are confronted with the question, unfortunately not discussed in the briefs, whether or not such fermented malt beverages are within the contemplation of Article XXII of our Constitution, which concerns "all intoxicating liquors." If such liquors are embraced within its control, then their sale must be performed exclusively "under such regulations as may hereafter be provided by statutory laws

of the State of Colorado." If such liquors are not within its control, then their sale is not so restricted. The Constitution contains no definition of "intoxicating liquors." After the adoption of Article XXII of the Constitution and before its effective date, our legislature at the same special session enacted separate statutes, one "An act regulating the sale and manufacture of beer and wine containing not more than 3.2% of alcohol by weight," and the other, "An act regulating the manufacture and sale of alcoholic liquor containing more than 3.2% of alcohol by weight," etc., and thereafter at the regular 1935 session the former act was amended substantially to its present form and made to concern only "fermented malt beverages," which are specifically declared to mean such beverages containing not more than 3.2 per cent alcohol by weight. At the time of its amendment in 1935 and prior to its amendment in 1945, the statute contained the specific declaration that "such fermented malt beverage is hereby declared to be non-intoxicating." While both these statutes were included in the 1935 compilation of our statutes in chapter 89, entitled "Intoxicating Liquors," it is patent that the legislature intended to implement the new constitutional amendment by establishing 3.2 per cent of alcohol by weight as the measure of alcoholic content beyond which beverages were intoxicating and below which they were nonintoxicating and to treat fermented malt beverages containing not more than 3.2 per cent of alcohol by weight as nonintoxicating. In such circumstances, was the state legislature competent to declare 3.2 per cent beer nonintoxicating and eliminate it from the control of the constitutional provision?

A similar situation existed within the federal jurisdiction. The National Prohibition Amendment barred intoxicating liquor. Under the National Prohibition, or Volstead, Act, intoxicating liquor was defined as that containing one-half of one per cent or more of alcohol by volume. By act of March 22, 1933, the

Congress attempted to exempt from its operation beer and certain other beverages containing not more than 3.2 per cent of alcohol by weight. Many state legislatures attempted definitions of what constituted intoxicating liquor. A list of the states and of such attempts may be found in *Ruppert v. Caffey,* 251 U.S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260. It seems to have been the consensus of opinion that a rigid classification of beverages as to alcoholic content in determining whether or not they were intoxicating was essential to effective regulation or effective prohibition of the sale of intoxicating liquors, and that it was within legislative competence, within reasonable limits, to declare below what percentage of alcoholic content beverages should be deemed nonintoxicating. As said in the opinion in *National Prohibition Cases,* 253 U.S. 350, 40 Sup. Ct. 486, 64 L. Ed. 946: "While recognizing that there are limits beyond which Congress cannot go in treating beverages as within its power of enforcement, we think those limits are not transcended by the provision of the Volstead Act (Title II, §1), wherein liquors containing as much as one-half of one per cent of alcohol by volume and fit for use for beverage purposes are treated within that power," and, while it was held that the definition of intoxicating liquor as changed by the Congress from a liquid containing one-half of one per cent of alcohol by volume to one containing 3.2 per cent by weight was not binding upon the states, it was held a proper and reasonable exercise of legislative authority in implementing the National Prohibition Amendment and providing for its effective enforcement. The question is discussed at length in *Louisville & N. R. Co. v. Falls City Ice & Beverage Company, Inc.,* 249 Ky. 807, 61 S.W. (2d) 639, and more briefly in *Ryman v. Legg, Sheriff,* 179 Ga. 534, 176 S.E. 403. Taking judicial notice of the apparently uniform decisions of state and federal courts, and having no evidence before us to the contrary, we conclude that our legislature could properly declare

that beer containing not more than 3.2 per cent of alcohol by weight legally was not intoxicating; that under such declaration the regulation of the manufacture and sale of fermented malt beverages as defined by the act was not restricted by the provisions of Article XXII of the Constitution, and that the legislature had power to delegate to county commissioners the regulation of the sale of such fermented malt beverages. *Johnson v. Board of County Com'rs*, 147 Kan. 211, 75 P. (2d) 849. However, while the legislature could properly declare that 3.2 per cent beer was not legally intoxicating, it could also, within limits, change that standard, as was done by the Congress in amending the Volstead Act, or it could repeal its enactment and abolish the legislative standard altogether, and this the Colorado legislature did. Having, in 1935, set up by independent statute an entirely separate scheme for regulating the manufacture and sale of 3.2 per cent beer, tied to the declaration that such beer was not intoxicating and therefore not within the restrictions of Article XXII of our Constitution, the legislature, in 1945, repealed its declaration that such beer was not intoxicating and left the scheme for its regulation adrift without an anchor. Since that repeal there remains no legislative standard by which to test whether such beverage is legally intoxicating, and the question becomes one of fact which must be determined by the trier of facts from the evidence. In the case before us no finding was made by the court below, and no evidence was submitted to the court from which it could determine whether or not 3.2 per cent beer is in fact intoxicating and whether or not its manufacture and sale are within the restrictions of Article XXII of our Constitution. A statute is presumed to be valid in all its provisions. The burden of proof is upon him who attacks its validity and in the absence of proof we must hold that plaintiffs have failed to establish the invalidity of the statute delegating the right of regulation of the sale of such

"fermented malt beverages" to county commissioners.
█ The one further challenge is that the attempted regulation prohibiting sale on Sundays is inconsistent with the provision contained in the 1945 amendment to the statute, which reads: "Provided, however, that such beverages shall not be sold to any person under the age of eighteen years and shall not be sold to any person between the hours of 12:00 o'clock midnight and 5:00 o'clock A. M." The argument is that where a statute contains a limitation, an ordinance containing a further limitation is invalid as in conflict with the statute. In support of that contention are cited *Noey v. City of Saginaw*, 271 Mich. 595, 261 N.W. 88, and *Neil House Hotel Co. v. City of Columbus*, 144 Ohio St. 248, 58 N.E. (2d) 665, wherein the court said:

"When the statutes and a valid regulation of the Board of Liquor Control say that the sale of intoxicants may not be made after a designated hour, it is equivalent to saying that sales up to that time are lawful, and an ordinance which attempts to restrict sales beyond an earlier hour is in conflict therewith and must yield. *Schneiderman, an Infant, v. Sesanstein*, 121 Ohio St. 80, 86, 167 N.E. 158, 160, 64 A.L.R. 981.

"In principle at least this case is controlled by the decision in *City of Akron v. Scalera*, 135 Ohio St. 65, 19 N.E. (2d) 279, the implications of which are that if a municipal ordinance of the type here involved is in collision with a general law upon the same subject, the ordinance is ineffective."

In answer to that contention defendant in error cites *State ex rel. v. Gregory*, 191 Wash. 70, 70 P. (2d) 788. There might well be cited also, *Ham v. Los Angeles County*, 46 Cal. App. 148, 189 Pac. 462, where the court quoted with approval from *Mann v. Scott*, 180 Cal. 550, 182 Pac. 281: "Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regula-

tions in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality, and which are not in themselves unreasonable." There it was held (contrary to the rule in Ohio) that a restriction of the speed of vehicles by statute does not prevent further restriction of speed by local ordinance; also might be cited *Ex parte Hoffman,* 155 Cal. 114, 99 Pac. 517, where it is held that a statute declaring that it shall be unlawful to sell milk containing less than a specified percentum of solids does not make invalid a city ordinance which requires a larger percentage than that required by statute; and *City of Bellingham v. Cissna,* 44 Wash. 397, 87 Pac. 481, where it is held competent for city authorities to prescribe a rate of speed less than that which the state law permitted, and the court said, "If it had been the intention of the legislature to provide that no municipal ordinance regulating speed of automobiles should be permitted, it could have so stated." Had our legislature desired to assume exclusive control of the hours of closing of establishments dispensing alcoholic beverages, it would have been easy so to declare. All presumptions favor the validity of the resolution and, in the absence of indication of legislative intent, and in view of the lack of harmony in precedents from other jurisdictions, we feel constrained to uphold its validity as not in violation of the statute.

Accordingly, the judgment of the trial court is affirmed insofar as it relates to places of business for the dispensing of fermented malt beverages as defined by the statute; it is reversed as to those dispensing malt and vinous liquors, and the case is remanded for entry of judgment accordingly.

Mr. Chief Justice Hilliard and Mr. Justice Alter dissent.

Mr. Justice Holland does not participate.

Mr. Chief Justice Hilliard dissenting.

It is important to emphasize that the sale of "fermented malt beverages" is covered by sections one to fourteen, chapter 89, '35 Colorado Statutes Annotated, designated there as article 1, and the sale of "malt, vinous or spirituous liquors" by sections fifteen to forty-seven, same chapter and compilation, designated as article 2. The first group of sections, or article 1, the "fermented malt beverage" law, was approved April 11, 1935, while the second group, or article 2, the "malt, vinous or spirituous liquors" law, was approved April 12, 1935. In short they were separate acts. Loosely, the first act has to do with nonintoxicating beverages, and the second act with intoxicating liquors. Or, as stated in the court's opinion, "Under our statutes the term 'fermented malt beverages' means any such beverages containing not more than 3.2 per cent of alcohol by weight, and their manufacture and sale are regulated by separate laws from those regulating the manufacture and sale of other alcoholic liquors, which are classified as malt, vinous and spirituous liquors."

By their first complaint plaintiffs alleged that they were "engaged in the dispensing of fermented malt beverages," and in an amended complaint they alleged that they were "engaged in the dispensing of fermented malt beverages *and* malt and vinous liquors." More simply stated, by their first complaint plaintiffs (all of them) claimed to be operating under article one of chapter 89, but in their amended complaint all alleged that they were operating under both articles, not some of them, identified, under article 1, and the remaining ones, identified, under article 2.

They further alleged that defendant board of county commissioners had adopted a certain resolution which it has "enforced, and threatens to continue to enforce," preventing the "sale of malt or vinous and fermented malt beverages between the hours of 12.00 o'clock mid-

night on Saturday and 8.00 a. m. on Monday of each week." They further alleged that "said resolution is arbitrary, unlawful and inconsistent," etc., and that there is "uncertainty and doubt as to the rights of these plaintiffs and of other persons similarly situated," etc. Their prayer was for preliminary and permanent injunction, and for a declaratory judgment, "determining and adjudicating that said resolution is null and void and of no legal effect." Defendant, answering, while not denying that all the plaintiffs were engaged in dispensing intoxicating liquors pursuant to article 2 of the law, nevertheless did deny that all of them were engaged in dispensing fermented malt beverages pursuant to article 1 thereof. It admitted the adoption and enforcement of the challenged resolution, its purpose to continue to enforce it, and the existence of certain statutes identified by plaintiffs as section 3, article 1, and section 17, article 2, chapter 89, '35 Colorado Statutes Annotated, quoted in paragraph 4 of the amended complaint; but it denied that said resolution is "arbitrary, unlawful and inconsistent with the provisions" of said sections of the statute. Based on its answer, defendant prayed for dismissal. Furthermore, a motion to that effect was appropriately and timely interposed by defendant. The motion was denied by the trial court, but I think it should have been sustained. But since after the incoming of the answer, the court granted defendant's motion for summary judgment, that which I think should have been done earlier, was quite as effectively accomplished by virtue of the motion which the court did grant, and perhaps more appropriately. In short, the final order resulted in judgment of dismissal, which was precisely what defendant prayed for.

Considering the joinder of plaintiffs in the light of the allegations, the question is, Was the action maintainable? Or, otherwise queried, Did not plaintiffs, judged only on their own showing, reveal a situation not maintainable by them jointly? A preliminary ob-

servation is, that, only plaintiffs are seeking relief — defendant seeks nothing. It stands on the resolution, which, as it is important to note, plaintiffs, standing on their allegations, confess they are observing. In granting defendant's motion for summary judgment, the sum thereof, and the situation understandingly appraised, was that the status of the parties remained as it was before the action was instituted. That in the course of the trial court's decision, it paused to discuss the merits of the controversy does not justify us in determining the law in a case presented by plaintiffs incompetently joined, and who, proceeding contrary to express statutory inhibitions, presently to be made clear, confessedly are operating under both articles of the statute.

1. By their allegations, as I conceive, plaintiffs pleaded themselves outside the pale, and, as I further conceive, no self-respecting minister of justice could have resolved other than did the distinguished trial jurist in his final order. Whether based on the allegations of the first complaint or the amended complaint, or both, plaintiffs were engaged in dispensing fermented malt beverages, and consequently were operating pursuant to article 1 of the act, and some of them, and, their allegations considered, all of them—and there was no showing otherwise—were dispensing intoxicating liquors as well, which means that at one and the same time they were conducting establishments in which they sold both intoxicating liquors and fermented malt beverages. Such action is specifically barred by sections 5 and 12, chapter 89, '35 Colorado Statutes Annotated.

2. In their first complaint, as already stated, all plaintiffs were claiming under article 1 of the act. In that view there was proper joinder of plaintiffs; but in the amended complaint, while still claiming under article 1, plaintiffs sought also to claim under article 2. In addition to the fact that the law inhibits the right of any to operate their establishments under both acts, and which should move us to order dismissal of the action,

the court's opinion necessarily is based upon the conclusion that some of the plaintiffs are operating under one statute and the others under another statute. Such construction, logically applied, indicates fatal misjoinder of parties plaintiff, and that likewise requires an order of dismissal. Where the "question of law * * * is common to all" in a given controversy, other necessary factors being present, there may be joinder of plaintiffs. Rule 20, R.C.P. Colo. Although, as already seen, plaintiffs did not allege, or even intimate, that some of them, identified, were dispensing nonintoxicants, and the remaining ones were dispensing intoxicants, the court here, assuming there were such groups, and proceeding on the premise born of that assumption, determined that one statute applied to one of the groups, and another statute to the other group, and adjudged that the group coming within the category of article 1 of the law must observe the resolution involved, and the group comprehended in article 2 of the law were absolved therefrom. It follows that, considered on the premise resulting from their pleading, plaintiffs stand thwarted by the law which forbids the sale of both fermented malt beverages and intoxicating liquors in the same establishment; and on the premise conjured by the court here that plaintiffs consist of two distinct groups, one operating under article 1 of the law and the other group under article 2 thereof, they stand defeated because of their misjoinder, their several causes not being determinable on a "law common to all." Incidentally, although the court here has conceived greatly and written mightily, law enforcement officers will scan its opinion vainly for light as they ponder the problem involved in keeping taverns operating in the circumstances here, both closed and open on Sunday. Indeed, the operators themselves, and their counsel as well, will not be able to proceed without concern born of uncertainty.

3. It is evident that the amended complaint is a departure from the first complaint. Originally, all of

plaintiffs invoked the same law, or article 1, which justified joinder; but by their amended complaint they claimed under diverse statutes, some of them, as the court here regards them, invoking article 1, and the others invoking article 2, which by every rule reflects misjoinder. Reasonably, since plaintiffs originally pleaded that they were conducting taverns pursuant to the fermented malt beverages act, and in an amended complaint pleaded the same thing again, and added that they also were conducting their taverns pursuant to the intoxicating liquors act, not maintainable jointly, for disposition here plaintiffs should be regarded as invoking only the fermented malt beverages act. Counsel for the county commissioners so regarded it, and declined to argue on plaintiffs' attempted joint claim under both statutes. The result in that regard is that, in so far as it pertains to intoxicating liquors, the court's opinion was written sans argument in behalf of the county commissioners. Considering the gravity of the question, I challenge the wisdom of such disposition. The case should be dismissed, so that those plaintiffs who are licensed to dispense fermented malt beverages, and identifying themselves accordingly, may invoke article 1, and that in a separate action those licensed to dispense intoxicating liquors, consistently identifying themselves, may proceed under article 2 of the law. Thus, and only thereby, may issues competently be presented and determined.

4. Considering what we have said in *Mulcahy v. Johnson*, 80 Colo. 499, 252 Pac. 816, and in *Gabriel v. Regents*, 83 Colo. 582, 267 Pac. 407, I gravely doubt the right of plaintiffs, in the situation here, to maintain actions for declaratory judgment. In the Mulcahy case we said that courts may not be interested in questions which have not arisen. In the sense of what I conceive to have been our meaning there, the question which plaintiffs seek to have determined here has not arisen; plaintiffs are observing the resolution against which

they inveigh. In the Gabriel case we cited Mulcahy v. Johnson, and applied the doctrine thereof in a declaratory judgment case.

5. With all respect to my brethren who are responsible for the court's opinion, and the judgment that taverns dispensing intoxicating liquors in Morgan county may remain open throughout Sundays, I regard such judgment, the record considered, as a gratuitous yielding to the improperly joined plaintiffs, who plead that they "are complying with the resolution, but such compliance inevitably damages their business heretofore had between 8 a. m. and 8 p. m. on Sundays." The county commissioners of the county involved, weighing what they believed would promote the interest of the people they were honored to serve, against the extra profits plaintiffs engaged in selling intoxicating liquors would derive from operating their taverns on Sunday—profits that those engaged in other businesses disdain to seek—resolved that such places should be closed on Sunday. The Honorable George C. Twombly, local district judge, before whom the right of the county commissioners to adopt and enforce the resolution was presented for determination, adjudged that the commissioners had kept within the law and performed "a reasonable and commendable" service. Let those who will, visit open Sunday taverns on a people thus circumstanced, but I will have none of it. Indeed, until such of the plaintiffs as are engaged in dispensing intoxicating liquors shall boldly proclaim their calling wholly disengaged with those dispensing nonintoxicants, and seek relief on their own status, I shall decline to give thought thereto. A new action, a fresh start, would not be more than fair to the county commissioners, nor less than fair to plaintiffs.

Mr. Justice Alter concurs in this dissenting opinion.